1  HOLLAND & KNIGHT LLP
    Shelley G. Hurwitz (State Bar #217566)
2  633 West Fifth Street, 21st Floor
   Los Angeles, California  90071-2040
3  Telephone (213) 896-2400
   Facsimile (213) 896-2450
4  shelley.hurwitz@hklaw.com

5  Attorneys for Defendant
   JetBlue Airways Corporation

6

FILED
CLERK, U.S. DISTRICT COURT

JAN 27 2011
11:31

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

7

8              **UNITED STATED DISTRICT COURT**

9               **CENTRAL DISTRICT CALIFORNIA**

10                  **WESTERN DIVISION**

11  LEE CHEIFER, on behalf of himself     )
    and all other similarly situated, and )
12  on behalf of the general public,      )   State Court Case No.: BC451887
                                          )
13          Plaintiffs,                   )   **CV 11 00822 SJO (PLAx)**
                                          )
14          vs.                           )   **NOTICE OF REMOVAL OF**
                                          )   **CIVIL ACTION FROM THE**
15  JETBLUE AIRWAYS                       )   **SUPERIOR COURT OF THE**
    CORPORATION, a Delaware               )   **STATE OF CALIFORNIA FOR**
16  corporation and DOES 1 through 50,    )   **THE COUNTY OF LOS ANGELES**
    inclusive                            )   **[28 U.S.C. §1441(b)]**
17                                        )
            Defendants.                   )
18                                        )
                                          )
19                                        )
                                          )
20  ──────────────────────────────────   )

21

22

23

24

25

26

27

28

-1-

NOTICE OF REMOVAL

TO THE HONORABLE JUDGES AND CLERK OF THE COURT:

PLEASE TAKE NOTICE that defendant JetBlue Airways Corporation ("JetBlue") hereby gives notice of removal to the United States District Court for the Central District of California, of the above-entitled civil action.  Pursuant to 28 U.S.C. § 1441(b), the Court may and should take jurisdiction over this action for all purposes for the following reasons:

1.   **JURISDICTION (DIVERSITY):**  This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) and thus it is properly removed to this Court pursuant to 28 U.S.C. § 1441.

a.   Complete Diversity Exists

Plaintiff Lee Cheifer ("Plaintiff") is an individual and a resident of the County of Los Angeles, State of California.  Complaint, ¶8.  While no class has been certified, Plaintiff requests that a class be certified only as to "persons located in California."  Complaint, ¶28.  Thus, Plaintiff, and the putative class, are citizens of the State of California.

Defendant JetBlue is a corporation organized under the laws of Delaware.  Complaint, ¶9; See also Exhibit 1, Documents from the Delaware Secretary of State.  JetBlue has its principal place of business in the State of New York, at 118-29 Queens Boulevard, Forest Hills, New York 11375.  *See Baez v. JetBlue Airways,*--- F.Supp.2d ----, 2010 WL 4065423 *1 (E.D.N.Y.,2010), attached as Exhibit 2; *Keegan v. Delta Air Lines, Inc.,* 2009 WL 1422576 *1 (W.D.Pa.,2009), attached as Exhibit 3; JetBlue 2009 Annual Report Form 10k, p. 1, true and correct copies of pertinent portions of the 10k are attached hereto as Exhibit 4.  Therefore, JetBlue is a citizen of the States of Delaware and New York.

Therefore, complete diversity of citizenship exists.

b.    The Amount In Controversy Exceeds $75,000

Plaintiff alleges that JetBlue has engaged in a "practice of monitoring and recording confidential telephone communications between Plaintiff and the Plaintiff Class, on the one hand, and JetBlue and its representatives, on the other hand" without notice to Plaintiff or the Plaintiff Class.  Complaint, ¶3.  Plaintiff alleges causes of action for alleged violation of California Penal Code Section 630, *et. seq.* and Negligence.

In addition to other relief, Plaintiff seeks damages of at least $5,000 per a violation, and seeks such damages on behalf of at least 250 class members.  *See* Complaint, ¶32 & p. 10.  Thus, the amount in controversy is at least $1,250,000 (which is calculated as 250 x $5,000).

Therefore, the amount in controversy requirement is satisfied as plaintiff's demand exceeds $75,000, exclusive of interest and costs.  *See Singer v. State Farm,* 116 F.3d 373, 377 (9th Cir. 2007).  Accordingly, this case is properly removed pursuant to 28 U.S.C. § 1441(b).

2.    **TIMELINESS:**  The instant Notice of Removal has been filed within 30 days of service of the Complaint on JetBlue.

3.    **JOINDER OF ALL SERVED DEFENDANTS:** JetBlue is the only named defendant.  Plaintiff has included "Does 1 though 50".  However, for the purposes of removal, "Doe" defendants are disregarded.  18 USC §1441(a)("For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 690-91 (9th Cir. 1998).

1    4.    **STATE COURT PLEADINGS:** Attached hereto as Exhibit 5 are

2  true and correct copies of all of the process, pleadings and orders in the State Court

3  action.

4    5.    **NOTICE TO STATE COURT AND PLAINTIFFS OF**

5  **REMOVAL:** Removing defendant has served a copy of this Notice of

6  Removal on plaintiff and will file a Notice of Filing Notice of Removal with the

7  Clerk of the Court of Los Angeles, California.

8

9  Date: January, 27 2011          HOLLAND & KNIGHT LLP

10

11                                    By: _____

12                                          Shelley G. Hurwitz

13                                          Attorneys for JetBlue Airways Corporation

14

15

16  # 8799085_v1

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT  1

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

## Department of State: Division of Corporations

HOME
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &
Authentication of
Documents

Frequently Asked Questions   View Search Results

### Entity Details

#### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | |
|---|---|---|
| File Number: | **2936994** | Incorporation Date / Formation Date: **08/24/1998** (mm/dd/yyyy) |

| | |
|---|---|
| Entity Name: | **JETBLUE AIRWAYS CORPORATION** |

| | | | |
|---|---|---|---|
| Entity Kind: | **CORPORATION** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |

#### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | **NATIONAL REGISTERED AGENTS, INC.** | | |
| Address: | **160 GREENTREE DRIVE SUITE 101** | | |
| City: | **DOVER** | County: | **KENT** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **(302)674-4089** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⦿ Status ◉ Status,Tax & History Information   Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

site map   |   about this site   |   contact us   |   translate   |   delaware.gov

# EXHIBIT  2

--- F.Supp.2d ----, 2010 WL 4065423 (E.D.N.Y.)

Motions, Pleadings and Filings
Judges and Attorneys
Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Rosalinda BAEZ, Plaintiff,
v.
JETBLUE AIRWAYS and Tiffany Malabet, Defendants.

No. 09-CV-596 (NGG)(SMG).
Oct. 15, 2010.

**Background:** Passenger filed action under section 1983 claiming airline and its employee violated her constitutional rights by subjecting her to false arrest and depriving her of fair trial and in diversity claiming that they defamed her and intentionally inflicted emotional distress upon her. Defendants moved to dismiss.

**Holdings:** The District Court, Nicholas G. Garaufis, J., held that:

(1) passenger's state law claims did not relate to "service" of airline, and thus were not preempted by Airline Deregulation Act (ADA);

(2) airline did not engage in extreme and outrageous conduct by relaying its employee's accusations to law enforcement officials, that passenger stated, "I have a bomb in my bag";

(3) passenger stated claim for intentional infliction of emotional distress against employee;

(4) airline did not affirmatively induce arresting officer to act;

(5) passenger stated claim of false arrest;

(6) passenger stated defamation claim;

(7) passenger stated negligent hiring claim; and

(8) passenger stated negligent training and supervision claim.

Motions granted in part and denied in part.

West Headnotes

[1]  ☑  KeyCite Citing References for this Headnote

⟸78 Civil Rights
  ⟸78III Federal Remedies in General
    ⟸78k1305 k. Substantive or procedural rights. Most Cited Cases

Section 1983 creates no substantive rights; rather, it provides a mechanism for enforcing a right or benefit established elsewhere. 42 U.S.C.A. § 1983.

[2]  ☑  KeyCite Citing References for this Headnote

⟸78 Civil Rights
  ⟸78III Federal Remedies in General
    ⟸78k1304 k. Nature and elements of civil actions. Most Cited Cases

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. 42 U.S.C.A. § 1983.

[3] ☑ KeyCite Citing References for this Headnote

⇐ 78 Civil Rights
　⇐ 78III Federal Remedies in General
　　⇐ 78k1323 Color of Law
　　　⇐ 78k1326 Particular Cases and Contexts
　　　　⇐ 78k1326(3) Private Persons or Corporations, in General
　　　　　⇐ 78k1326(4) k. In general. Most Cited Cases

⇐ 78 Civil Rights ☑ KeyCite Citing References for this Headnote
　⇐ 78III Federal Remedies in General
　　⇐ 78k1323 Color of Law
　　　⇐ 78k1326 Particular Cases and Contexts
　　　　⇐ 78k1326(3) Private Persons or Corporations, in General
　　　　　⇐ 78k1326(5) k. Cooperation with state actor. Most Cited Cases

For the purposes of a § 1983 action, private parties act under color of state law if (1) the state compelled the private party's conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state. 42 U.S.C.A. § 1983.

[4] ☑ KeyCite Citing References for this Headnote

⇐ 78 Civil Rights
　⇐ 78III Federal Remedies in General
　　⇐ 78k1323 Color of Law
　　　⇐ 78k1326 Particular Cases and Contexts
　　　　⇐ 78k1326(3) Private Persons or Corporations, in General
　　　　　⇐ 78k1326(5) k. Cooperation with state actor. Most Cited Cases

A private party acts under color of state law within meaning of § 1983 if it conspires with state actors to deprive someone of his or her constitutional rights; there must be such a close nexus between the state and the challenged private action that seemingly private behavior may be fairly treated as that of the state itself. 42 U.S.C.A. § 1983.

[5] ☑ KeyCite Citing References for this Headnote

⇐ 78 Civil Rights
　⇐ 78III Federal Remedies in General
　　⇐ 78k1323 Color of Law
　　　⇐ 78k1326 Particular Cases and Contexts
　　　　⇐ 78k1326(3) Private Persons or Corporations, in General
　　　　　⇐ 78k1326(4) k. In general. Most Cited Cases

Providing false information to the police does not make a private individual a state actor and liable under § 1983. 42 U.S.C.A. § 1983.

[6] ☑ KeyCite Citing References for this Headnote

⇐ 78 Civil Rights
　⇐ 78III Federal Remedies in General

      ⇐≈78k1323 Color of Law
         ⇐≈78k1326 Particular Cases and Contexts
            ⇐≈78k1326(3) Private Persons or Corporations, in General
               ⇐≈78k1326(4) k. In general. <u>Most Cited Cases</u>

    A longstanding pattern of repeated lies and false accusations made for the purpose of procuring an arrest may constitute state action for purposes of <u>§ 1983</u>. <u>42 U.S.C.A. § 1983</u>.

[7] ☑ KeyCite Citing References for this Headnote

⇐<u>170B</u> Federal Courts
    ⇐<u>170BVI</u> State Laws as Rules of Decision
        ⇐<u>170BVI(C)</u> Application to Particular Matters
           ⇐≈<u>170Bk422</u> Limitation Laws
              ⇐<u>170Bk427</u> k. Computation and tolling. <u>Most Cited Cases</u>

    When deciding whether to apply state or federal relation-back law, a court must determine which law affords a more forgiving principle of relating back, and apply that principle. <u>Fed.Rules Civ.Proc.Rule 15(c)(1)(A), 28 U.S.C.A.</u>

[8] ☑ KeyCite Citing References for this Headnote

⇐<u>241</u> Limitation of Actions
    ⇐≈<u>241II</u> Computation of Period of Limitation
        ⇐≈<u>241II(H)</u> Commencement of Proceeding; Relation Back
           ⇐<u>241k121</u> Defects as to Parties
              ⇐≈<u>241k121(2)</u> k. Amendment of defects. <u>Most Cited Cases</u>

    Under federal law, the "linchpin" of the relation back doctrine is notice to the defendant; if the notice requirement is met, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification, including the omission of a defendant's first or last name. <u>Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.</u>

[9] ☑ KeyCite Citing References for this Headnote

⇐<u>241</u> Limitation of Actions
    ⇐≈<u>241II</u> Computation of Period of Limitation
        ⇐<u>241II(H)</u> Commencement of Proceeding; Relation Back
           ⇐≈<u>241k127</u> Amendment of Pleadings
              ⇐≈<u>241k127(1)</u> k. In general. <u>Most Cited Cases</u>

    A defendant need not have received formal notice in the form of a summons and complaint for the relation-back doctrine to apply; it is sufficient that such notice occur through informal means. <u>Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.</u>

[10] ☑ KeyCite Citing References for this Headnote

⇐<u>241</u> Limitation of Actions
    ⇐≈<u>241II</u> Computation of Period of Limitation
        ⇐≈<u>241II(H)</u> Commencement of Proceeding; Relation Back
           ⇐≈<u>241k121</u> Defects as to Parties
              ⇐<u>241k121(2)</u> k. Amendment of defects. <u>Most Cited Cases</u>

    The relevant inquiry under the relation-back doctrine is what the improperly named defendant knew or should have known during the relevant period, not what the plaintiff knew or should have

known at the time of filing her original complaint. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

[11] ☑ KeyCite Citing References for this Headnote

⇐241 Limitation of Actions
  ⇐241II Computation of Period of Limitation
    ⇐241II(H) Commencement of Proceeding; Relation Back
      ⇐241k124 k. Intervention or bringing in new parties. Most Cited Cases

    Under the relation-back doctrine, determining whether a defendant had adequate notice of the complaint poses two factual questions, that is, whether the defendant received some form of notice on a timely basis and whether such notice as she received was adequate to prevent resultant prejudice from the delay in naming her as a defendant. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

[12] ☑ KeyCite Citing References for this Headnote

⇐70 Carriers
  ⇐70IV Carriage of Passengers
    ⇐70IV(D) Personal Injuries
      ⇐70k309 Actions for Injuries
        ⇐70k311 k. Rights of action and defenses. Most Cited Cases

⇐115 Damages ☑ KeyCite Citing References for this Headnote
  ⇐115III Grounds and Subjects of Compensatory Damages
    ⇐115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
      ⇐115III(A)2 Mental Suffering and Emotional Distress
        ⇐115k57.4 Preemption
          ⇐115k57.5 k. In general. Most Cited Cases

⇐168 False Imprisonment ☑ KeyCite Citing References for this Headnote
  ⇐168I Civil Liability
    ⇐168I(A) Acts Constituting False Imprisonment and Liability Therefor
      ⇐168k1 Nature and Elements of False Imprisonment
        ⇐168k2.5 k. Preemption. Most Cited Cases

⇐237 Libel and Slander ☑ KeyCite Citing References for this Headnote
  ⇐237I Words and Acts Actionable, and Liability Therefor
    ⇐237k1.7 k. Preemption. Most Cited Cases

⇐360 States ☑ KeyCite Citing References for this Headnote
  ⇐360I Political Status and Relations
    ⇐360I(B) Federal Supremacy; Preemption
      ⇐360k18.15 k. Particular cases, preemption or supersession. Most Cited Cases

    Passenger's state law claims of defamation, false arrest, negligent hiring, negligent retention, and negligent supervision, and intentional infliction of emotional distress against airline and its employee, for falsely stating that passenger said, "I have a bomb in my bag," did not relate to "service" of airline under Airline Deregulation Act (ADA), and thus were not preempted by ADA. 49 U.S.C.A. § 41713.

[13] ☑ KeyCite Citing References for this Headnote

⇐70 Carriers
  ⇐70IV Carriage of Passengers

⟸70IV(D) Personal Injuries
  ⟸70k309 Actions for Injuries
    ⟸70k311 k. Rights of action and defenses. <u>Most Cited Cases</u>

⟸360 States ☑ <u>KeyCite Citing References for this Headnote</u>
  ⟸360I Political Status and Relations
    ⟸360I(B) Federal Supremacy; Preemption
      ⟸360k18.21 k. Carriers; railroads. <u>Most Cited Cases</u>

The threshold inquiry when determining whether claims are preempted under the Airline Deregulation Act (ADA) is to define whether the activity at issue in the claim is an airline service; if the court determines that an activity is not an airline service for purposes of the Act, the preemption inquiry ceases, and the state law claims are actionable. 49 U.S.C.A. § 41713.

[14] ☑ <u>KeyCite Citing References for this Headnote</u>

⟸115 Damages
  ⟸115III Grounds and Subjects of Compensatory Damages
    ⟸115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
      ⟸115III(A)2 Mental Suffering and Emotional Distress
        ⟸115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
          ⟸115k57.21 k. Elements in general. <u>Most Cited Cases</u>

Under New York law, an intentional infliction of emotional distress claim requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.

[15] ☑ <u>KeyCite Citing References for this Headnote</u>

⟸115 Damages
  ⟸115X Proceedings for Assessment
    ⟸115k208 Questions for Jury
      ⟸115k208(6) k. Mental suffering and emotional distress. <u>Most Cited Cases</u>

Under New York law, a court decides whether the alleged conduct is sufficiently outrageous to be actionable as intentional infliction of emotional distress.

[16] ☑ <u>KeyCite Citing References for this Headnote</u>

⟸115 Damages
  ⟸115III Grounds and Subjects of Compensatory Damages
    ⟸115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
      ⟸115III(A)2 Mental Suffering and Emotional Distress
        ⟸115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
          ⟸115k57.22 k. Nature of conduct. <u>Most Cited Cases</u>

To constitute intentional infliction of emotional distress under New York law, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

[17] ☑ <u>KeyCite Citing References for this Headnote</u>

⟸115 Damages

⇐▦115III Grounds and Subjects of Compensatory Damages
  ⇐▦115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
    ⇐▦115III(A)2 Mental Suffering and Emotional Distress
      ⇐▦115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
        ⇐▦115k57.25 Particular Cases
          ⇐▦115k57.25(1) k. In general. Most Cited Cases

    Airline did not engage in extreme and outrageous conduct by relaying its employee's accusations to law enforcement officials, that passenger stated, "I have a bomb in my bag," where no employee other than defendant employee knew that defendant employee's statement was false; after receiving report of bomb threat from defendant employee, airline's security agent merely took passenger to security office for questioning.

[18] ☑  KeyCite Citing References for this Headnote

⇐▦115 Damages
  ⇐▦115III Grounds and Subjects of Compensatory Damages
    ⇐▦115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
      ⇐▦115III(A)2 Mental Suffering and Emotional Distress
        ⇐▦115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
          ⇐▦115k57.25 Particular Cases
            ⇐▦115k57.25(1) k. In general. Most Cited Cases

    Airline passenger stated claim for intentional infliction of emotional distress under New York law against employee of airline on allegations that employee falsely accused her of making bomb threat; airline employee in post-9/11 America knew or should have known that her false accusations would, at the very least, likely subject passenger to extensive police interrogation and potentially serious criminal charges.

[19] ☑  KeyCite Citing References for this Headnote

⇐▦168 False Imprisonment
  ⇐▦168I Civil Liability
    ⇐▦168I(A) Acts Constituting False Imprisonment and Liability Therefor
      ⇐▦168k1 Nature and Elements of False Imprisonment
        ⇐▦168k2 k. In general. Most Cited Cases

    Under New York law, to state a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.

[20] ☑  KeyCite Citing References for this Headnote

⇐▦168 False Imprisonment
  ⇐▦168I Civil Liability
    ⇐▦168I(A) Acts Constituting False Imprisonment and Liability Therefor
      ⇐▦168k15 Persons Liable
        ⇐▦168k15(2) k. Persons procuring or instigating arrest. Most Cited Cases

⇐▦249 Malicious Prosecution ☑  KeyCite Citing References for this Headnote
  ⇐▦249I Nature and Commencement of Prosecution
    ⇐▦249k3 k. Instigation of or participation in prosecution. Most Cited Cases

    A civilian complainant, by merely seeking police assistance or furnishing information to law

enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable under New York law for false arrest or malicious prosecution.

[21] ☑ KeyCite Citing References for this Headnote

⇐ **168** False Imprisonment
   ⇐ **168I** Civil Liability
      ⇐ **168I(A)** Acts Constituting False Imprisonment and Liability Therefor
         ⇐ **168k15** Persons Liable
            ⇐ **168k15(2)** k. Persons procuring or instigating arrest. Most Cited Cases

    For a private defendant to be liable for false arrest under New York law, the defendant must have affirmatively induced the arresting officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition; furthermore, to show that a private party intended to confine the plaintiff, it is not enough that the defendant's words or actions caused a police officer to confine him, the plaintiff must show that the defendant directed an officer to take him into custody.

[22] ☑ KeyCite Citing References for this Headnote

⇐ **168** False Imprisonment
   ⇐ **168I** Civil Liability
      ⇐ **168I(A)** Acts Constituting False Imprisonment and Liability Therefor
         ⇐ **168k15** Persons Liable
            ⇐ **168k15(2)** k. Persons procuring or instigating arrest. Most Cited Cases

    Airline did not affirmatively induce arresting officer to act, as required for private defendant to be liable for false arrest under New York law, by airline security agent approaching passenger that had been accused by airline gate agent of stating that "I have a bomb in my bag" and ordering her, not knowing that accusation was false, to accompany him to security office where law enforcement officials detained and interrogated passenger for approximately five hours, particularly where airline personnel had not directed law enforcement officials to arrest her and they had not acted with officious and undue zeal in procuring her arrest.

[23] ☑ KeyCite Citing References for this Headnote

⇐ **168** False Imprisonment
   ⇐ **168I** Civil Liability
      ⇐ **168I(A)** Acts Constituting False Imprisonment and Liability Therefor
         ⇐ **168k15** Persons Liable
            ⇐ **168k15(2)** k. Persons procuring or instigating arrest. Most Cited Cases

    Passenger's allegation that airline gate agent falsely stated that passenger said, "I have a bomb in my bag," stated claim of false arrest under New York law, since agent knew or should have known that agent's statement would likely lead to passenger's detention and interrogation.

[24] ☑ KeyCite Citing References for this Headnote

⇐ **237** Libel and Slander
   ⇐ **237IV** Actions
      ⇐ **237IV(B)** Parties, Preliminary Proceedings, and Pleading
         ⇐ **237k79** Declaration, Complaint, or Petition
            ⇐ **237k83** k. Intent and malice. Most Cited Cases

Under New York law, a plaintiff is not required to include allegations of malice in its complaint alleging defamation.

[25] ☑ KeyCite Citing References for this Headnote

⇦ 237 Libel and Slander
   ⇦ 237I Words and Acts Actionable, and Liability Therefor
      ⇦ 237k23 Publication
         ⇦ 237k23.1 k. In general. Most Cited Cases

Airline passenger stated defamation claim under New York law on allegations that airline gate agent had "provided false and misleading information to various news and/or media outlets" by falsely stating that passenger in airport said, "I have a bomb in my bag"; although passenger did not allege whether defamatory statements were written or verbal or to whom agent had made them, defamation claim only required plaintiff to show that defendant published defamatory statements to third party.

[26] ☑ KeyCite Citing References for this Headnote

⇦ 231H Labor and Employment
   ⇦ 231HXVIII Rights and Liabilities as to Third Parties
      ⇦ 231HXVIII(B) Acts of Employee
         ⇦ 231HXVIII(B)1 In General
            ⇦ 231Hk3039 Negligent Hiring
               ⇦ 231Hk3040 k. In general. Most Cited Cases

⇦ 231H Labor and Employment ☑ KeyCite Citing References for this Headnote
   ⇦ 231HXVIII Rights and Liabilities as to Third Parties
      ⇦ 231HXVIII(B) Acts of Employee
         ⇦ 231HXVIII(B)1 In General
            ⇦ 231Hk3042 k. Negligent retention. Most Cited Cases

⇦ 231H Labor and Employment ☑ KeyCite Citing References for this Headnote
   ⇦ 231HXVIII Rights and Liabilities as to Third Parties
      ⇦ 231HXVIII(B) Acts of Employee
         ⇦ 231HXVIII(B)1 In General
            ⇦ 231Hk3043 k. Negligent supervision. Most Cited Cases

Under New York law, an employer can be held liable under theories of negligent hiring, negligent retention, and negligent supervision.

[27] ☑ KeyCite Citing References for this Headnote

⇦ 231H Labor and Employment
   ⇦ 231HXVIII Rights and Liabilities as to Third Parties
      ⇦ 231HXVIII(B) Acts of Employee
         ⇦ 231HXVIII(B)1 In General
            ⇦ 231Hk3039 Negligent Hiring
               ⇦ 231Hk3040 k. In general. Most Cited Cases

⇦ 231H Labor and Employment ☑ KeyCite Citing References for this Headnote
   ⇦ 231HXVIII Rights and Liabilities as to Third Parties
      ⇦ 231HXVIII(B) Acts of Employee

⟸ 231HXVIII(B)1 In General
⟸ 231Hk3042 k. Negligent retention. Most Cited Cases

⟸ 231H Labor and Employment ☑ KeyCite Citing References for this Headnote
⟸ 231HXVIII Rights and Liabilities as to Third Parties
⟸ 231HXVIII(B) Acts of Employee
⟸ 231HXVIII(B)1 In General
⟸ 231Hk3043 k. Negligent supervision. Most Cited Cases

A necessary element of negligent hiring, negligent retention, and negligent supervision causes of action under New York law is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury.

[28] ☑ KeyCite Citing References for this Headnote

⟸ 231H Labor and Employment
⟸ 231HXVIII Rights and Liabilities as to Third Parties
⟸ 231HXVIII(B) Acts of Employee
⟸ 231HXVIII(B)1 In General
⟸ 231Hk3043 k. Negligent supervision. Most Cited Cases

To assert a claim for negligent training under New York law, a plaintiff must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm.

[29] ☑ KeyCite Citing References for this Headnote

⟸ 231H Labor and Employment
⟸ 231HXVIII Rights and Liabilities as to Third Parties
⟸ 231HXVIII(B) Acts of Employee
⟸ 231HXVIII(B)1 In General
⟸ 231Hk3039 Negligent Hiring
⟸ 231Hk3040 k. In general. Most Cited Cases

Airline passenger stated negligent hiring claim against airline under New York law, on allegations that airline did not make reasonable inquiries into employee's background and that it would have learned that employee was patently unqualified for her position had it used reasonable care in inquiring into her background.

[30] ☑ KeyCite Citing References for this Headnote

⟸ 70 Carriers
⟸ 70IV Carriage of Passengers
⟸ 70IV(D) Personal Injuries
⟸ 70k283 Acts or Omissions of Carrier's Employees
⟸ 70k283(1) k. In general. Most Cited Cases

Airline passenger stated negligent retention claim against airline under New York law, on allegations that airline knew, or should have known in exercise of reasonable care, that employee had propensity for retaliating against customers who made complaints against her.

[31] ☑ KeyCite Citing References for this Headnote

⟸ 70 Carriers
⟸ 70IV Carriage of Passengers

☞ 70IV(D) Personal Injuries
   ☞ 70k283 Acts or Omissions of Carrier's Employees
      ☞ 70k283(1) k. In general. Most Cited Cases

   Airline passenger stated negligent training and supervision claim against airline under New York law, on allegations that airline did not adequately train its employees to properly respond to passenger complaints and it did not discipline employee even when it learned of previous instances in which employee had made false allegations against passengers who had filed complaints against her.

[32] ☑ KeyCite Citing References for this Headnote

☞ 170A Federal Civil Procedure
   ☞ 170AXX Sanctions
      ☞ 170AXX(A) In General
         ☞ 170Ak2751 Constitutional, Statutory or Regulatory Provisions
            ☞ 170Ak2753 k. Purpose. Most Cited Cases

☞ 170A Federal Civil Procedure  ☑ KeyCite Citing References for this Headnote
   ☞ 170AXX Sanctions
      ☞ 170AXX(B) Grounds for Imposition
         ☞ 170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
            ☞ 170Ak2769 k. Reasonableness or bad faith in general; objective or subjective standard.
Most Cited Cases

   The purpose of Federal Rule of Civil Procedure 11 is to deter baseless filings in district court; Rule 11 sanctions are appropriate only where there is clear evidence that a plaintiff's claims are brought in bad faith. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

[33] ☑ KeyCite Citing References for this Headnote

☞ 170A Federal Civil Procedure
   ☞ 170AXX Sanctions
      ☞ 170AXX(B) Grounds for Imposition
         ☞ 170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
            ☞ 170Ak2774 Motions and Opposition Thereto
               ☞ 170Ak2774(4) k. Disqualification and recusal motions. Most Cited Cases

   District court declined to exercise its discretion to award costs to plaintiff, in denying defendant's motion for Rule 11 sanctions, in part because plaintiff's attorney had not spent significant amount of time responding to motion; defendant had asserted that plaintiff's pleadings were so legally and factually inadequate that filing of amended complaint warranted sanctions, but plaintiff adequately pleaded most of her claims and there was no evidence of bad faith on plaintiff's part. Fed.Rules Civ.Proc.Rule 11(c)(1)(A), 28 U.S.C.App.(2006 Ed.).

Jon L. Norinsberg, Law Office of Jon L. Norinsberg, New York, NY, for Plaintiff.

Christopher G. Kelly, Robert J. Burns, Holland & Knight LLP, George Spencer Kolbe, Raven & Kolbe LLP, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, District Judge.
   ***1*** Plaintiff Rosalinda Baez ("Baez") brings this action under 42 U.S.C. § 1983 and state law against JetBlue Airways ("JetBlue"), and Tiffany Malabet ("Malabet") (collectively, "Defendants"). (Am. Compl.("Complaint") (Docket Entry # 35) ¶¶ 1, 2.) Plaintiff claims that Defendants violated her constitutional rights by subjecting her to false arrest and depriving her of a fair trial. ( *Id.* ¶¶ 73, 77.)

Plaintiff further claims that Defendants defamed her and intentionally inflicted emotional distress upon her. ( *Id.* ¶¶ 83, 85.) Malabet moves to dismiss pursuant to <u>Federal Rule of Civil Procedure 12 (b)(6)</u>. (Malabet Mot. to Dismiss (Docket Entry # 46).) JetBlue moves to dismiss the complaint pursuant to <u>Federal Rule of Civil Procedure 12(b)(6)</u>. (JetBlue Mot. to Dismiss (Docket Entry # 36).) JetBlue also moves for sanctions against Baez pursuant to <u>Federal Rule of Civil Procedure 11</u>. (JetBlue Mot. for Sanctions (Docket Entry # 38).) For the following reasons, JetBlue's motion to dismiss is granted in part and denied in part, and its motion for sanctions is denied. Malabet's motion to dismiss is granted in part and denied in part.

## I. BACKGROUND <u>FN1</u>
### A. The Parties
Plaintiff Rosalinda Baez is a citizen and resident of Texas. (Complaint ¶ 1.) Defendant JetBlue is a Delaware corporation licensed to do business in the state of New York. ( *Id.* ¶ 2.) JetBlue's principal place of business is in Queens, New York. ( *Id.*) Defendant Tiffany Malabet is a citizen and resident of New York. ( *Id.* ¶ 3.) JetBlue employed Malabet as a gate agent at John F. Kennedy International Airport ("JFK") in Queens, New York.

### B. Factual Background
On April 15, 2008, Baez arrived at JFK at 6:23 a.m. (Complaint ¶ 11.) She checked in at the JetBlue counter and received a boarding pass for her 8:05 a.m. flight to Austin, Texas. ( *Id.* ¶ 12.) At the check-in counter, a JetBlue representative informed Baez that her plane would depart from Gate 18, but failed to tell her that Gate 18 was located in a separate terminal. ( *Id.* ¶¶ 13-14.) Baez proceeded through security and waited for her flight in the wrong terminal. ( *Id.* ¶ 15.) An hour later, when Baez did not hear her flight announced, she spoke with a JetBlue representative who told her that the flight was departing from a different terminal. ( *Id.* ¶ 16.)

When Baez arrived at the correct gate, the waiting area was empty. ( *Id.* ¶ 17.) Baez approached JetBlue agent Tiffany Malabet, who was exiting the jet bridge. ( *Id.*) Baez asked to board the plane, which was still at the gate. ( *Id.* ¶ 18.) Malabet told Baez, "I just closed the flight and you ain't getting on it." ( *Id.* ¶ 19.) Baez told Malabet she had been waiting in the wrong terminal for over an hour, but Malabet refused to let her board the plane. ( *Id.* ¶ 22.)

Baez then asked Malabet what would happen to her luggage if she were to board a different flight. ( *Id.* ¶ 23.) Malabet told Baez that her bag would be in Austin when she arrived. ( *Id.* ¶ 24.) Baez responded, "[t]hat doesn't make any sense. Isn't it a security risk to let a bag go on a plane without a passenger, what if there was a bomb in the bag?" ( *Id.* ¶ 25.) Malabet said that if there were a bomb in the bag, Transportation Security Administration ("TSA") officials would know, to which plaintiff replied, "TSA-my ass." ( *Id.* ¶ 26.) Baez and Malabet then parted ways. ( *Id.* ¶ 27.) Baez's flight remained at the gate for an additional thirty minutes before departing. ( *Id.* ¶¶ 28-29.) During that time, Malabet did not report Baez's comment to the TSA or JetBlue. ( *Id.* ¶ 30.)

*\*2* Baez returned to the JetBlue customer service counter to re-book her flight. ( *Id.* ¶ 31.) While an agent was re-booking Baez's flight, Malabet approached the agent and said, "this one thinks she's getting on a flight ... [s]he['s] nasty, I['m] gonna mark her record." ( *Id.* ¶¶ 32, 33.) Baez commented that she was a frequent flier with JetBlue and asked why Malabet was treating her so rudely, but Malabet did not respond. ( *Id.* ¶ 34.) The booking agent gave Baez a boarding pass for the 1:05 p.m. flight to Austin. ( *Id.* ¶ 35.)

While she waited for her flight, Baez filed an online complaint with JetBlue that identified Malabet by her first name and detailed their exchanges at the gate and at the customer service counter. ( *Id.* ¶¶ 36, 37.) In response to Baez's complaint, JetBlue officials spoke with Malabet about the incident while Baez was still in the airport waiting for her flight. ( *Id.* ¶¶ 38, 39.) Malabet told the JetBlue officials that, during their conversation at the jet bridge, Baez had said, "[w]ell I have a bomb in my bag, so are you guys going to turn the plane around, 'cause I need my bag.' " ( *Id.* ¶ 41.) Malabet also told the officials that Baez had said that, "TSA does not know how to do their f-ing job, because if it did, TSA would not catch [the bomb] and let it go through." ( *Id.* ¶ 42.)

In response to Malabet's accusations, a JetBlue security agent approached Baez and directed her

to accompany him to the security office. ( *Id.* ¶ 46.) Then, for approximately five hours, law enforcement officials interrogated Baez about her patriotism, whether she had suicidal thoughts, and whether she used prescription drugs.<u>FN2</u> ( *Id.* ¶¶ 46-48.) They repeatedly asked Baez to admit that she had made a bomb threat, but she refused. ( *Id.* ¶ 49.) After finishing the interrogation, the officials arrested Baez and "charged" her with making a false bomb threat. ( *Id.* ¶ 50.)

The story of Baez's arrest garnered international media attention, receiving coverage in the United States, South Africa, Denmark, Germany, and Sweden. (Complaint ¶ 54.) Baez alleges the publicity damaged her personal and professional reputation, and permanently impaired her employment prospects. ( *Id.* ¶¶ 53, 54). Prior to this incident, Baez had never been arrested. ( *Id.* ¶ 55.)

**C. Procedural Background**
    Baez filed her initial complaint in this action against JetBlue and Tiffany "Doe" on February 12, 2009. (Docket Entry # 1.) In it, she asserted four federal claims under 42 U.S.C § 1983: false arrest, malicious prosecution, malicious abuse of process, and denial of the right to a fair trial. ( *Id.* ¶¶ 52, 55, 65, 70.) She also asserted state law claims of false arrest, malicious prosecution, malicious abuse of process, intentional infliction of emotional distress, prima facie tort, negligent hiring, negligent training, negligent supervision, negligent retention, unjust enrichment, and defamation. ( *Id.* ¶ 52, 55, 65, 70, 74, 79, 84, 88, 94.) On April 15, 2009, JetBlue moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ( *See* Docket Entry # 9.)

    **\*3** On June 10, 2009, Baez moved for default judgment against Tiffany "Doe" for "failure to plead or otherwise defend" herself under Federal Rule of Civil Procedure 55 and Local Rule 55.2. (Docket Entry # 17.) On June 15, 2009, JetBlue moved to dismiss all claims against Tiffany "Doe" for failure to effect service on her pursuant to Federal Rule of Civil Procedure 4(m). (Docket Entry # 19.) On February 17, 2009, Baez left a summons for Tiffany "Doe" with a JetBlue employee described in the summons as a "co-worker." ( *See* Docket Entry # 4.) Baez subsequently mailed a summons and complaint addressed to "Doe" to JetBlue headquarters. ( *Id.*) Malabet has not worked at JetBlue since December 31, 2008. (Carbone Aff. (Docket Entry # 22) ¶ 2.) Furthermore, Baez never asked JetBlue to further identify Tiffany "Doe." (Burns Aff. (Docket Entry # 21) ¶ 2.)

    On August 3, 2009, 2009 WL 2447990, Judge Charles P. Sifton granted JetBlue's motion to dismiss Baez's claims against JetBlue and denied as moot JetBlue's motion to dismiss the claims against Tiffany "Doe." (Memorandum and Order dated August 3, 2009 ("Sifton Order") (Docket Entry # 26) 1.) Judge Sifton also granted Baez leave to amend her claims for false arrest, negligence, denial of the right to a fair trial, intentional infliction of emotional distress, and defamation, and granted Baez 30 days to plead diversity jurisdiction as to "Doe," which she had failed to do in her initial complaint. ( *Id.* at 29.)

    On October 22, 2009, Baez filed an amended complaint against JetBlue and Tiffany Malabet. (Complaint ¶ 2, 3.) <u>FN3</u> That complaint adequately pleads complete diversity. ( *Id.* ¶ 3.) Baez properly served Malabet for the first time on October 5, 2009. (Malabet Summons (Docket Entry # 33).) The case was reassigned to this court on November 24, 2009.

**II. STANDARD OF REVIEW**
    When evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008) (citation omitted). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A mere "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Rather, the complaint must contain sufficient "[f]actual allegations ... to raise a right to relief above the speculative level." *Id.* A court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss. *ATSI*

*Commc'ns, Inc. v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) (citation omitted).

## III. DISCUSSION
### A. Section 1983 Claims

**\*4** [1] ☑ [2] ☑ Section 1983 creates no substantive rights; rather, it provides a "mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir.2005) (citation omitted). "To state a claim under § 1983, a[p]laintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

[3] ☑ [4] ☑ For the purposes of a § 1983 action, private parties act under color of state law if (1) the state compelled the private party's conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state. *See Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir.2008). A private party also acts under color of state law if it conspires with state actors to deprive someone of his or her constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There must be "such a close nexus between the State and the challenged [private] action that seemingly private behavior may be fairly treated as that of the State itself." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.2003) (citations and internal quotation marks omitted).

[5] ☑ [6] ☑ Baez's allegations are insufficient to state a claim that either JetBlue or Malabet acted under color of state law. Baez contends that Defendants acted under color of state law because they provided false information to law enforcement officials who then interrogated and arrested her. But "providing false information to the police does not make a private individual ... a state actor and liable under § 1983." *Chodkowski v. City of New York*, No. 06-cv-7120 (LBS), 2007 WL 2717872, at *8-9, 2007 U.S. Dist. LEXIS 67822, at *28 (S.D.N.Y. September 11, 2007). *See also Fisk v. Letterman*, 401 F.Supp.2d 362, 368 (S.D.N.Y.2005) (dismissing a § 1983 claim because the false testimony of a private actor is insufficient to show conspiracy with a state). A longstanding pattern of repeated lies and false accusations made for the purpose of procuring an arrest may constitute state action. *Chodkowski*, 2007 WL 2717872, at *8, 2007 U.S. Dist. LEXIS 67822, at *27. Baez makes no such allegation here. She only cites the isolated incident on April 15, 2008. Because Baez insufficiently alleges that Defendants are state actors, Defendants' motions to dismiss are granted with respect to all federal claims.

### B. State Law Claims [FN4]

#### 1) *Relation Back of Amended Complaint*

Malabet asserts that Baez's state law claims against her should be dismissed as untimely under N.Y. C.P.L.R. § 215(3). ((Docket Entry # 46) at 15, 25.) [FN5] The events that gave rise to all of Baez's state claims occurred on April 15, 2008. (Complaint ¶ 11.) Baez did not name Malabet as a party until she filed her amended complaint on October 22, 2009, more than one year and six months later. ( *Id.* ¶ 3.) Baez argues that her amended complaint naming Malabet was timely because it relates back to the initial complaint, which was filed within the statute of limitations period. ((Docket Entry # 48) 33.)

**\*5** [7] ☑ An amended complaint filed after the applicable limitations period has expired is nonetheless timely if it relates back to the original complaint. *See* Fed.R.Civ.P. 15(c). When an amendment to a pleading changes "the naming of the party against whom a claim is asserted," the amendment relates back to the date of the original pleading" if the claim arises "out of the conduct, transaction, or occurrence set out ... in the original pleading," and "if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed.R.Civ.P. (c)(1)(B)-(C). [FN6]

[8] ☑ [9] ☑ [10] ☑ Under federal law, the "linchpin" of the relation back doctrine is notice to the defendant. *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). "If the notice requirement is met ... a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification," including the omission of a defendant's first or last name. *Godlewska v. Human Dev. Ass'n*, CV-03-3985 (DGT), 2006 WL 1422410, at *5, 2006 U.S. Dist. LEXIS 30519, at *15 (E.D.N.Y. May 18, 2006). A defendant need not have received formal notice in the form of a summons and complaint; "[i]t is sufficient that such notice occur through informal means." *Blaskiewicz v. County of Suffolk*, 29 F.Supp.2d 134, 138 (E.D.N.Y.1998). The relevant inquiry is what the improperly named defendant "knew or should have known during the [relevant] period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S.p.A.*, --- U.S. ----, 130 S.Ct. 2485, 2493, 177 L.Ed.2d 48 (2010) (emphasis in original).

[11] ☑ Baez's claims against Malabet indisputably arose from the same incident as Baez's claims against JetBlue, namely, that she was falsely arrested due to Malabet's accusations. Baez provided Malabet's first name, Tiffany, in her initial complaint. She also gave sufficient details regarding her arrest that, had Malabet seen the complaint, she should have known that, but for a mistake, Baez would have brought the claims against her. *See, e.g., Godlewska*, 2006 WL 1422410, at *5, 2006 U.S. Dist. LEXIS 30519, at *15. The only remaining question is thus whether Malabet had timely notice of the complaint. Determining whether Malabet had adequate notice "poses two factual questions, that is, whether the defendant received some form of notice on a timely basis and whether such notice as [s]he received was adequate to prevent resultant prejudice from the delay in naming [her] as a defendant." *Sigmund v. Martinez*, 06 Civ. 1043(RWS), 2006 WL 2016263, at *5, 2006 U.S. Dist. LEXIS 49265, at *13 (S.D.N.Y. July 10, 2006).

Under federal law, notice would have been timely until the 120 day period for service ended on June 12, 2009. *See* Fed. R. Civ. Proc. 4(m). The record is insufficient for the court to determine whether or not Malabet had timely informal notice of Baez's claims and whether Malabet was prejudiced. The court orders limited discovery on these two issues. Malabet's motion to dismiss is denied without prejudice pending that discovery. After such discovery is completed, the parties may submit new motions.

### 2) Preemption

*6 [12] ☑ [13] ☑ Defendants argue that Baez's state law claims are expressly and impliedly preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. (JetBlue Mem. 25.) The ADA expressly preempts any state law relating to "a price, route, or service of an airline carrier." 49 U.S.C. § 41713. The Second Circuit has not as yet ruled on exactly what types of claims § 41713 preempts. However, "actions in which plaintiffs invoke traditional elements of tort law ... overwhelmingly incline against federal preemption." *Pittman v. Grayson*, 869 F.Supp. 1065, 1072 (S.D.N.Y.1994). "The threshold inquiry" when determining whether claims are preempted under § 41713 is to "define whether the activity at issue in the claim is an airline service." *Rombom v. U.S. Air Lines*, 867 F.Supp. 214, 221 (S.D.N.Y.1994). "If the court determines that an activity is not an airline service for § 41713 purposes, the preemption inquiry ceases, and the state law claims are actionable." *Id.*

Baez's state law claims do not involve the type of activity that courts have considered to be a "service" under § 41713. *See id.* at 223 (barring claims of mistreatment during flight because air travel is a service, but allowing false arrest claim because it occurred after plaintiff had disembarked); *see also Von Hundertmark v. Boston Professional Hockey Ass'n, Inc.*, CV-93-1369, 1996 WL 118538, at *2, 1996 U.S. Dist. LEXIS 20231, at *6 (E.D.N.Y. March 7, 1996) (allowing claims of negligent training and supervision of flight attendants because claims only marginally related to airline service). Baez's claims are not preempted by the ADA.

### 3) Intentional Infliction of Emotional Distress

[14] ☑ [15] ☑ [16] ☑ Under New York law, an IIED claim requires a showing of "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir.2001). Whether the

alleged conduct is sufficiently outrageous to satisfy the first element is a matter of law for a court to decide. *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy." *Conboy,* 241 F.3d at 258 (internal quotation marks omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (internal quotation marks omitted). "Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." *Cohn-Frankel v. United Synagogue of Conservative Judaism,* 246 A.D.2d 332, 667 N.Y.S.2d 360, 362 (1st Dep't 1998).

[17] ☑ Baez's allegations are insufficient to state a claim that JetBlue engaged in extreme and outrageous conduct when it relayed Malabet's accusations to law enforcement officials. Baez does not present any facts indicating that any JetBlue employee other than Malabet knew Malabet's statements were false. With respect to JetBlue, she merely alleges that, after receiving a report of a bomb threat from one of its employees, one of JetBlue's security agents took Baez to a security office for questioning. (Complaint ¶ 46.) This conduct falls far from the standard of extreme and outrageous behavior.

**\*7** [18] ☑ Baez's allegation that Malabet falsely accused her of making a bomb threat is sufficient to state a claim for IIED. Generally, "allegations of providing false information to the police ... do not suffice" for an IIED claim absent additional outrageous behavior. *Rivers v. Towers, Perrin, Forster & Crosby, Inc.,* No. CV-07-5441(DGT), 2009 WL 817852, at \*3, 2009 U.S. Dist. LEXIS 26301, at \*9 (E.D.N.Y. March 27, 2009). However, as an airline employee in post-9/11 America, Malabet knew or should have known that her false accusations would, at the very least, likely subject Baez to extensive police interrogation and potentially serious criminal charges.

### 4) False Arrest

[19] ☑ [20] ☑ [21] ☑ Under New York law, to state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). A "civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution." *Levy v. Grandone,* 14 A.D.3d 660, 789 N.Y.S.2d 291, 293 (2d Dep't 2005). For a private defendant to be liable for false arrest, "[t]he defendant must have affirmatively induced the [arresting] officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Curley v. AMR Corp.,* 153 F.3d 5, 13-14 (2d Cir.1998). Furthermore, to show that a private party "intended to confine [the plaintiff] ... [i]t is not enough that the defendant's words or actions caused a police officer to confine him; plaintiff must show that the defendant directed an officer to take him into custody." *Du Chateau v. Metro-North Commuter R.R. Co.,* 253 A.D.2d 128, 688 N.Y.S.2d 12, 16 (1st Dep't 1999) (internal brackets and quotation marks omitted).

[22] ☑ Baez alleges that JetBlue actively took part in her arrest when a JetBlue security agent approached her and "ordered [her] to accompany [the] agent to a security office" where law enforcement officials "detained and interrogated [her] for approximately five hours." (Complaint ¶¶ 46, 47.) Baez's allegations concerning JetBlue's security agent's actions alone are insufficient to plead a false arrest claim. Furthermore, Baez has not alleged facts suggesting that JetBlue personnel directed law enforcement officials to arrest her or that JetBlue personnel acted with officious and undue zeal in procuring her arrest. Her false arrest claim against JetBlue is therefore dismissed.

[23] ☑ Baez claims that Malabet acted with "officious and undue zeal" in procuring her arrest when she falsely accused Baez of making a bomb threat. This allegation is sufficient to survive Malabet's motion to dismiss. Although falsely accusing someone of a crime does not generally rise to

the level of false arrest, Malabet, an airline gate agent working after 9/11, knew or should have known that falsely stating that Baez said, "I have a bomb in my bag" in JFK airport would likely lead to Baez's detention and interrogation. Depending on the context in which Malabet made this accusation, it could rise to the level of acting with "officious and undue zeal" in procuring Baez's false arrest.

### 5) *Defamation*

**\*8** The Second Circuit has held that a defamation claim under New York law requires a plaintiff to show (1) that defendants made a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statement concerned the plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was slander per se or caused special damages. *Albert v. Loksen,* 239 F.3d 256, 265 (2d Cir.2001).

[24] ☑ Judge Sifton previously determined that Baez adequately pleaded her defamation claim against Defendants. (Sifton Order at 28.) JetBlue challenges this conclusion on the ground that Baez's amended complaint failed to plausibly plead that JetBlue made its defamatory statements "with malice." (JetBlue Mem. at 31.) However, under New York law, a "plaintiff is not required to include ... allegations of malice in its complaint." *Util. Metal Research, Inc. v. Generac Power Sys.,* 179 Fed.Appx. 795 (2d Cir.2006). JetBlue's motion to dismiss the defamation claim is thus denied.

[25] ☑ Malabet argues that Baez's defamation claim should fail because Baez failed to allege whether the defamatory statements were written or oral or to whom Malabet made them. Baez did not name an individual to whom Malabet made defamatory statements or say whether she made the statements orally or in writing, but she did allege that Malabet "provided false and misleading information to various news and/or media outlets." (Complaint ¶ 85.) Baez's allegations meet the standard for a defamation claim, which only requires a plaintiff to show that a defendant "published [defamatory statements] to a third party." *Albert,* 239 F.3d at 265. Malabet's motion to dismiss Baez's defamation claim is consequently denied.

### 6) *Negligence Claims against JetBlue*

[26] ☑ [27] ☑ [28] ☑ Under New York law, an employer can "be held liable under theories of negligent hiring, negligent retention, and negligent supervision." *Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dep't 1997). "[A] necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Id.* To assert a claim for negligent training, a plaintiff "must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm." *Carter v. Port Auth. of N.Y. & N.J.,* 03 Civ. 8751(DLC), 2004 WL 2978282, at *5, 2004 U.S. Dist. LEXIS 25633, at *16 (S.D.N.Y. December 20, 2004).

Judge Sifton previously indicated that "amendment to [Baez's] negligence claim would not be futile" if she "plausibly allege[d] facts indicating that defendant Jet[B]lue knew or should have known of Doe's propensity for retaliating against customers for making complaints, or that there were deficiencies in employee training that caused the harm." (Sifton Order at 23.)

[29] ☑ [30] ☑ [31] ☑ Baez amended her Complaint accordingly. She claims that JetBlue was negligent in hiring Malabet because it "failed to make reasonable inquiries into" Malabet's background, and that, had JetBlue "used reasonable care in inquiring into [her background], it would have learned that [Malabet] was patently unqualified for [her] position." (Complaint ¶¶ 96-97.) Baez alleges JetBlue was negligent in retaining Malabet as an employee because "JetBlue knew, or in the exercise of reasonable care, should have known, that [Malabet] had a propensity for retaliating against customers who made complaints against her." (Complaint ¶ 102.) Baez further claims that JetBlue "failed to adequately train its employees ... to properly respond to passenger complaints," and, even when it "learned of previous instances in which [Malabet] had made false allegations against passengers who had filed complaints against her ..., [JetBlue] failed to discipline" Malabet. (Complaint ¶¶ 109, 113-14.) Drawing all inferences in Baez's favor and accepting all of her allegations as true, Baez has adequately pled her claims for negligent hiring, retention, training, and supervision.

**C. JetBlue's Motion for Sanctions Under Federal Rule 11**

*9 [32] ☑  The purpose of Federal Rule of Civil Procedure 11 is to "deter baseless filings in district court." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Rule 11 sanctions are appropriate only where there is clear evidence that a plaintiff's claims are brought in bad faith. See Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977).

[33] ☑  JetBlue argues that Plaintiff's pleadings are so legally and factually inadequate that the filing of the amended complaint warrants sanctions. (Mot. for Sanctions at 1.) Baez maintains that her allegations have ample legal and factual support, and that the court should award her the costs of responding to JetBlue's motion. ((Docket Entry # 38) at 1.) Baez has adequately pleaded claims for defamation, negligent hiring, negligent supervision, negligent training, and negligent retention against JetBlue, and JetBlue has presented no evidence of bad faith on Baez's part. See Browning 560 F.2d at 1088. JetBlue's motion for sanctions is therefore denied. The court declines, however, to exercise its discretion to award costs to Baez, in part because there is no evidence that her attorney spent a significant amount of time responding to JetBlue's motion. See Fed.R.Civ.P. 11(c)(1)(A) (a court may award reasonable expenses and attorney fees to the party prevailing in presenting or opposing a motion for sanctions).

**IV. CONCLUSION**

For the reasons set forth above, Malabet's motion to dismiss the Amended Complaint is GRANTED as to the § 1983 claims and DENIED without prejudice as to the state law claims for defamation, false arrest, and intentional infliction of emotional distress. JetBlue's motion to dismiss the Amended Complaint is GRANTED as to the § 1983 claims and the claims for false arrest and intentional infliction of emotional distress and DENIED as to the claims for negligent supervision, negligent retention, negligent training, negligent hiring, and defamation. JetBlue's motion for sanctions is DENIED.

SO ORDERED.

FN1. The following facts are drawn from Plaintiff's Complaint and accepted for the purposes of this motion.

FN2. It is unclear from the Complaint whether these were state or federal law enforcement officials. Baez refers to them only as "state and/or federal law enforcement officials." (Complaint ¶¶ 70-71.) Because Baez brings claims under 42 U.S.C. § 1983, which requires state action, the court will assume they were state rather than federal officers for the purposes of deciding this motion.

FN3. For the first time, Baez named Tiffany Malabet, rather than Tiffany "Doe."

FN4. This court has diversity jurisdiction over Baez's remaining state claims, since Baez pleads complete diversity as to JetBlue and Malabet. See Cushing v. Moore, 970 F.2d 1103, 1106 (2d Cir.1992).

FN5. The one year statute of limitations on intentional torts outlined in CPLR § 215 also applies to Intentional Infliction of Emotional Distress ("IIED") claims. See Young v. Suffolk County, 705 F.Supp.2d 183, 211 (E.D.N.Y.2010). Malabet has not, however, argued that the IIED claim against her is time barred. As such, the court addresses Baez's IIED claim against Malabet in conjunction with her IIED claim against JetBlue.

FN6. Federal Rule of Civil Procedure 15(c)(1)(A) states that a complaint will also relate back if "the law that provides the applicable statute of limitations allows relation back." "In deciding whether to apply state or federal relation back law, the Court must determine which law affords a more forgiving principle of relating back," and apply that principle. *Williams v. United States*, 07 Civ. 3018(RJS), 2010 WL 963474, at *11, 2010 U.S. Dist. LEXIS 25102, at *29, *30 (S.D.N.Y. Feb. 25, 2010). The court has reviewed the applicable New York relation back standard, and finds the federal standard to be more forgiving as applied in this case. Therefore, the court addresses only the federal relation back standard.

E.D.N.Y.,2010.
Baez v. JetBlue Airways
--- F.Supp.2d ----, 2010 WL 4065423 (E.D.N.Y.)

Motions, Pleadings and Filings <u>(Back to top)</u>

• <u>2009 WL 4959322</u> (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Jetblue Airways Corporation's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Frcp 12(b)(6) (Oct. 30, 2009) <u>Original Image of this Document (PDF)</u>
• <u>2009 WL 4959323</u> (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Jetblue Airways Corporation's Motion for Sanctions Pursuant to FRCP 11(C) (Oct. 30, 2009) <u>Original Image of this Document (PDF)</u>
• <u>2009 WL 4959320</u> (Trial Motion, Memorandum and Affidavit) Memorandum of Law (Jun. 15, 2009) <u>Original Image of this Document (PDF)</u>
• <u>2009 WL 4959319</u> (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Jetblue Airways Corporation's Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(B)(6) (Jun. 5, 2009) <u>Original Image of this Document (PDF)</u>
• <u>2009 WL 4959317</u> (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Jetblue Airways Corporation's Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12 (B)(6) (Apr. 15, 2009) <u>Original Image of this Document (PDF)</u>

Judges and Attorneys <u>(Back to top)</u>

<u>Judges</u> | <u>Attorneys</u>

Judges

• **Garaufis, Hon. Nicholas George**
United States District Court, Eastern New York
New York
<u>Litigation History Report</u> | <u>Judicial Motion Report</u> | <u>Judicial Reversal Report</u> | <u>Judicial Expert Challenge Report</u> | <u>Profiler</u>

Attorneys

Attorneys for Defendant
• **Burns, Robert J.**
New York, New York
<u>Litigation History Report</u> | <u>Profiler</u>

• **Kelly, Christopher G.**
New York, New York
<u>Litigation History Report</u> | <u>Profiler</u>

• **Kolbe, George S.**

New York, New York
Litigation History Report | Profiler

Attorneys for Plaintiff
• **Norinsberg, Jon L.**
New York, New York
Litigation History Report | Profiler

END OF DOCUMENT

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT  3

Slip Copy, 2009 WL 1422576 (W.D.Pa.)

<u>Motions, Pleadings and Filings</u>
<u>Judges and Attorneys</u>
Only the Westlaw citation is currently available.

United States District Court,
W.D. Pennsylvania.
Karin KEEGAN, Plaintiff,
v.
DELTA AIR LINES, INC., and Jet Blue Airways, Defendant.

No. 02:09cv00057.
May 20, 2009.

<u>Samuel J. Cordes</u>, <u>Christine T. Elzer</u>, Ogg, Cordes, Murphy & Ignelzi, Pittsburgh, PA, for Plaintiff.

<u>Beth M. Henke</u>, Marcus & Shapira, <u>Christopher K. Ramsey</u>, <u>Stephanie R. Reiss</u>, Morgan, Lewis & Bockius, Pittsburgh, PA, for Defendants.

### *MEMORANDUM ORDER*

<u>TERRENCE F. McVERRY</u>, District Judge.

**\*1** Now pending are DEFENDANT DELTA AIR LINE INC.'s MOTION TO DISMISS (Document No. 13) and DEFENDANT JET BLUE AIRWAYS's MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR IN THE ALTERNATIVE, TRANSFER VENUE (Document No. 17). All parties have filed briefs (Document Nos. 14, 16, 18, 23, and 24) in support of their respective positions and the motions are ripe for resolution.

*Procedural History*

The original complaint in this case was filed on January 16, 2009. On February 9, 2009, Defendant Delta filed a Motion to Dismiss pursuant to Rule 12(b)(6). In response to Defendant's motion, Plaintiff filed an Amended Complaint on February 10, 2009. Defendants have renewed their Motions to Dismiss, contending despite the amendments, the complaint still fails to state a claim upon which relief can be granted.

*Factual Background*

In the Amended Complaint, Plaintiff asserts the following: (a) in Count One, a claim of sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") against Jet Blue; (b) in Count Two, a Title VII sex discrimination claim against Delta; and (c) a sex discrimination claim under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. § 955 *et seq.* against both Jet Blue and Delta [FN1] Plaintiff, Karin Keegan, has been employed as a flight attendant by Delta since July 2000. (Am.Compl.2.) Delta has an agreement with Jet Blue that provides Delta employees with free airline transportation on Jet Blue to and from work. *Id.*

> FN1. Plaintiff amended the original complaint to abandon her claim in Count III against Delta under Title VII of the Civil Rights Act of 1964 for "hostile work environment."

Plaintiff lives in Pittsburgh, Pennsylvania. Defendant Delta Airlines has its principal place of business in Atlanta, Georgia. Defendant JetBlue has its principal place of business in Forest Hills, New York. The incident giving rise to this lawsuit occurred at a JetBlue terminal at JFK airport in New York. Plaintiff alleges that on October 10, 2007, a Jet Blue employee named Oliver Angus denied Plaintiff access to board its plane, because she was not appropriately dressed, while allowing others flight attendants with less seniority who were "more provocatively" dressed to board. *Id.* When Plaintiff changed into "more provocative" clothes, Plaintiff alleges that Oliver Angus told her, "she was too late

to board the plane and should have dressed like that before." *Id.* Plaintiff alleges that she complained to a Jet Blue supervisor and a Delta supervisor, both of whom failed to remedy the situation. *Id.* at 3. Plaintiff alleges that Delta's and Jet Blue's discriminatory denial of an employment benefit resulted in lost wages, loss of economic benefits, emotional distress, depression, inconvenience and humiliation. *Id.* at 3-6.

*Legal Analysis*

The Court need not reach the merits of Defendants' motions to dismiss the amended complaint pursuant to Fed. R Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Instead, the Court concludes that this lawsuit was filed in an improper venue.

Plaintiff alleges claims under Title VII and the Pennsylvania Human Relations Act ("PHRA"). The same legal standards govern claims under both statutes. Title VII contains an venue provision at 42 U.S.C. § 2000e-5(f)(3):

*2 Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

This venue provision is exclusive. *See Thurmon v. Marietta Data Systems*, 596 F.Supp. 367, 368 (M.D.Pa.1984). Although the amended complaint does not allege where the conduct at issue took place, Plaintiff does not contest that the incident occurred at JFK airport in New York and that the employment records relevant to the incident would also be maintained in New York. *See* Rossi Declaration and Reply Brief at 4. The Court notes that the amended complaint alleges that JetBlue's principal office is also in New York. The alleged practice did not occur in Pennsylvania, the employment records are not maintained in Pennsylvania, and Defendants' principal offices are not located in Pennsylvania. Thus, venue is not proper in this Court.

Pursuant to 28 U.S.C. § 1406(a), if venue is improper, a court can either dismiss the claim or transfer it to a district in which it could have been brought. In this case, the complaint could (and should) have properly been brought in the United States District Court for the Eastern District of New York. In the interest of justice, the case will be transferred to that Court.

Accordingly, DEFENDANT JET BLUE AIRWAYS's MOTION TO TRANSFER VENUE (Document No. 17) is **GRANTED.** The clerk shall transfer this case to the United States District Court for the Eastern District of New York.

So **ORDERED.**

W.D.Pa.,2009.
Keegan v. Delta Air Lines, Inc.
Slip Copy, 2009 WL 1422576 (W.D.Pa.)

Motions, Pleadings and Filings (Back to top)

- 2:09cv00057 (Docket) (Jan. 16, 2009)

Judges and Attorneys (Back to top)

Judges | Attorneys

Judges

- **McVerry, Hon. Terrence F.**
  United States District Court, Western Pennsylvania
  Pennsylvania
  Litigation History Report | Judicial Motion Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

---

Attorneys

Attorneys for Defendant
- **Henke, Beth M.**
  Pittsburgh, Pennsylvania
  Litigation History Report | Profiler

- **Ramsey, Christopher K.**
  Pittsburgh, Pennsylvania
  Litigation History Report | Profiler

- **Reiss, Stephanie R.**
  Pittsburgh, Pennsylvania
  Litigation History Report | Profiler

Attorneys for Plaintiff
- **Cordes, Samuel J.**
  Pittsburgh, Pennsylvania
  Litigation History Report | Profiler

- **Elzer, Christine T.**
  Pittsburgh, Pennsylvania
  Litigation History Report | Profiler

END OF DOCUMENT

(c) 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT  4

# jetBlue
## 2009





Dear Fellow Shareholders,

Despite a very challenging environment, 2009 was a successful year for JetBlue as we reported four consecutive quarters of profitability – one of only a few U.S. airlines to do so. We generated net income of $58 million and an operating margin of 8.5% – an improvement of more than $140 million compared to 2008. We ended the year with over $1 billion in cash and short term investments – one of the strongest liquidity positions in the U.S. airline industry relative to our revenues. Additionally, JetBlue generated positive free cash flow for the first time in our history.

These results demonstrate the benefits of our disciplined growth strategy, driving our highest net income since 2003. We remain committed to striving to build long term shareholder value through sustainable growth and positive free cash flow. This commitment drives our focus on managing capital expenditures, rationalizing capacity, maximizing revenue and controlling costs while preserving and expanding our unique brand and culture.

**The JetBlue Brand and Culture**

We celebrated the 10th anniversary of our first flight on February 11, 2010 – a significant accomplishment given that few airlines since airline deregulation in 1978 have been able to reach their ten year mark as healthy, stand-alone enterprises.

We continue to be recognized for exceptional customer service. For the fifth year in a row, JetBlue achieved the number one customer service ranking among low cost carriers by J.D. Power and Associates. This coveted award, along with many others received in 2009, serves as a testament to our 12,000 crewmembers and the strength of our brand.

During 2009, we continued to enhance our customers' travel experience. We refreshed our food and beverage selections onboard our aircraft, offering more complimentary snack options. We also began offering free first-run movies in-flight to customers traveling outside of the continental U.S. We believe our cabin experience, which includes more legroom than any other domestic airline's coach product and free DIRECTV and Sirius XM Radio installed by our LiveTV subsidiary, to be the best in the industry.

JetBlue's customers and crewmembers enjoyed the first full year in our new Terminal 5 facility at JFK Airport, our home base of operations. Terminal 5 provides a world-class airport experience that matches our award-winning experience in the air. We are the largest domestic carrier at JFK, which coupled with our service to LaGuardia, Newark, Stewart/Newburgh and White Plains, bolsters our position as New York's true hometown airline. New York is an important part of our heritage and culture, and we look forward to further solidifying our commitment to New York by combining our corporate offices into one main support center in Long Island City, Queens.

**Disciplined Growth**

In the short span of ten years, JetBlue has grown to serve 23 million customers annually, operate 151 aircraft, serve 60 cities and achieved annual revenues of $3.3 billion in 2009. As we enter our second decade, we firmly believe JetBlue has an impressive array of growth opportunities. In contrast to our prior growth, we believe our future growth should be funded primarily through cash internally generated from operations. Hence, we have focused on free cash flow, which captures our ability to generate cash from operations and

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the fiscal year ended December 31, 2009

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____
Commission file number 000-49728

# JETBLUE AIRWAYS CORPORATION
(Exact name of registrant as specified in its charter)

| Delaware | 87-0617894 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**118-29 Queens Boulevard**
**Forest Hills, New York 11375**
(Address, including zip code, of registrant's principal executive offices)
**(718) 286-7900**
Registrant's telephone number, including area code:

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $0.01 par value | The NASDAQ Global Select Market |
| Participating Preferred Stock Purchase Rights | |

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by checkmark whether the registrat has submitted electronically and posted on its corporate Website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☐   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| (Do not check if a smaller reporting company) | | | |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐   No ☒

The aggregate market value of the registrant's common stock held by non-affiliates of the registrant as of June 30, 2009 was approximately $1,068,690,000 (based on the last reported sale price on the NASDAQ Global Select Market on that date). The number of shares outstanding of the registrant's common stock as of January 31, 2010 was 291,722,138 shares.

## DOCUMENTS INCORPORATED BY REFERENCE

Portions of the Registrant's Proxy Statement for its 2010 Annual Meeting of Stockholders, which is to be filed subsequent to the date hereof, are incorporated by reference into Part III of this Form 10-K.

## ITEM 1.   BUSINESS

### Overview

JetBlue Airways Corporation is a passenger airline that we believe has established a new airline category — a "value airline" — based on service, style, and cost. Known for its award-winning customer service and free TV as much as for its competitive fares, JetBlue believes it offers its customers the best coach product in markets it serves with a strong core product and reasonably priced optional upgrades. JetBlue operates primarily on point-to-point routes with its fleet of 110 Airbus A320 aircraft and 41 EMBRAER 190 aircraft — the youngest and most fuel-efficient fleet of any major U.S. airline. As of December 31, 2009, we served 60 destinations in 20 states, Puerto Rico, and eleven countries in the Caribbean and Latin America. Most of our flights have as an origin or destination one of our focus cities: Boston, Fort Lauderdale, Los Angeles/Long Beach, New York/JFK, or Orlando. By the end of 2009, we operated on average 600 daily flights. For the year ended December 31, 2009 JetBlue was the 7th largest passenger carrier in the United States based on revenue passenger miles as reported by those airlines. As used in this Form 10-K, the terms "JetBlue", "we", "us", "our" and similar terms refer to JetBlue Airways Corporation and its subsidiaries, unless the context indicates otherwise.

JetBlue was incorporated in Delaware in August 1998 and commenced service February 11, 2000. Our principal executive offices are located at 118-29 Queens Boulevard, Forest Hills, New York 11375 and our telephone number is (718) 286-7900. Our filings with the Securities and Exchange Commission, or the SEC, are accessible free of charge at our website *http://investor.jetblue.com*. Information contained on our website is not incorporated by reference in this report.

# EXHIBIT  5

1   KENNETH S. GAINES, ESQ. SBN 049045
    DANIEL F. GAINES, ESQ. SBN 251488
2   ALEX P. KATOFSKY, ESQ. SBN 202754
    **GAINES & GAINES, APLC**
3   21550 Oxnard Street, Suite 980
    Woodland Hills, CA 91367
4   Telephone: (818) 703-8985
    Facsimile: (818) 703-8984
5

**FILED**
Los Angeles Superior Court

DEC 23 2010

DEPT # 324 (CCW (HON. Emilie H. Elias)

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

6   Attorneys for Plaintiff Lee Cheifer, on behalf of himself and all others similarly situated, and on
    behalf of the general public

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                   **FOR THE COUNTY OF LOS ANGELES**

10

11   LEE CHEIFER, on behalf of himself and all      CASE NO: **BC 451887**
     others similarly situated, and on behalf of the
12   general public,                                *Assigned to the Honorable
                                                    Department*
13              Plaintiffs,
                                                    **CLASS ACTION COMPLAINT FOR
14   v.                                             DAMAGES AND INJUNCTIVE RELIEF:**

15   JETBLUE AIRWAYS CORPORATION, a                 **1) INVASION OF PRIVACY (CAL. PENAL
     Delaware corporation, and DOES 1 through 50,   CODE § 630 *ET. SEQ.*)**
16   inclusive,                                     **2) NEGLIGENCE**

17              Defendants.                         **DEMAND FOR JURY TRIAL**

18

19       Plaintiff Lee Cheifer ("CHEIFER" or "Plaintiff"), an individual, on behalf of himself and on

20   behalf of all others similarly situated (the "Plaintiff Class"), hereby alleges as follows:

21                              **INTRODUCTION**

22       1.     Defendant JETBLUE AIRWAYS CORPORATION, a Delaware corporation

23   ("JETBLUE"), offers airplane travel services to consumers across California, the United States,

24   and other countries.

25       2.     Without providing notice to, or obtaining the consent of, Plaintiff and the Plaintiff

26   Class, JETBLUE engages in a practice of monitoring and recording confidential telephone

27   communications between Plaintiff and the Plaintiff Class, on the one hand, and JETBLUE and its

28                                          -1-

                              **CLASS ACTION COMPLAINT**

1 | representatives, on the other hand.

2 |      3.     Plaintiff engaged in telephone communications with JETBLUE and its
3 | representatives and/or agents regarding his travel plans during November 2010. Based on
4 | information and belief, Plaintiff alleges that said telephone conversations were secretly recorded
5 | and/or monitored by JETBLUE, without first providing him notice and without first obtaining his
6 | consent to record and/or monitor the telephone conversations. During the course of these
7 | conversations with JETBLUE, Plaintiff disclosed sensitive personal identifying information and
8 | confidential financial information.

9 |      4.     JETBLUE's practice of monitoring, recording and/or eavesdropping on Plaintiff
10 | and Plaintiff Class members' telephone conversations violated, and continues to violate *California*
11 | *Penal Code* § 630 *et seq.*

12 |      5.     Plaintiff is a member of the Plaintiff Class because his telephone conversations
13 | with JETBLUE and its representatives were, without the knowledge or consent of the Plaintiff,
14 | eavesdropped upon, bugged, wiretapped, and/or recorded by JETBLUE.

15 |      6.     Plaintiff brings this action as a class action seeking all appropriate damages and
16 | remedies available to him and members of the Plaintiff Class proposed herein, including but not
17 | limited to injunctive relief pursuant to *Penal Code* § 637.2(b).

18 |      7.     All allegations in this complaint are based upon information and belief except for
19 | those allegations which pertain to CHEIFER and his counsel. CHEIFER's information and belief
20 | is based upon, *inter alia*, an investigation conducted to date by CHEIFER and his counsel.

21 | **THE PARTIES**

22 |      8.     Plaintiff CHEIFER is an individual and a resident of the County of Los Angeles,
23 | State of California. CHEIFER had telephonic communications with certain employees, agents,
24 | officers, and/or directors of JETBLUE. CHEIFER is informed and believes, and based thereon
25 | alleges, that each of these conversations referenced herein was, without CHEIFER's knowledge or
26 | consent, bugged, recorded, wiretapped, and/or eavesdropped upon by Defendants, and each of
27 | them, all to CHEIFER's harm and damage.

28 |

-2-

1    9.    CHEIFER is informed and believes, and based thereon alleges, that JETBLUE is a

2    corporation organized under the laws of Delaware, legally operating and authorized to legally

3    operate and conduct business under the laws of the State of Delaware.

4    10.    Plaintiff is informed, believes, and thereupon alleges, that Defendant JETBLUE has

5    its principal place of business in the State of Washington.

6    11.    Plaintiff is informed and believes, and based thereon alleges, that the wrongful acts

7    alleged herein by JETBLUE were performed or occurred in the County of Los Angeles, State of

8    California, and throughout the State of California.

9    12.    CHEIFER is further informed and believes, and based thereon alleges, that

10   additional calls have been bugged, recorded, wiretapped, and/or eavesdropped upon by

11   Defendants, and each of them, without CHEIFER's and Plaintiff Class members' consent,

12   originating from various locations within the State of California.

13   13.    The true names and/or capacities, whether individual, corporate, associate or

14   otherwise, of Defendants DOES 1 through 50 inclusive, and each them, are unknown to

15   CHEIFER, who therefore sues said Defendants by such fictitious names. CHEIFER is informed

16   and believes, and upon such information and belief hereby alleges, that each of the Defendants

17   fictitiously named herein as a DOE is legally responsible, negligently or in some other manner, for

18   the events and happenings hereinafter referred to and proximately caused the damages to Plaintiff

19   and Plaintiff Class members as hereinafter alleged.  CHEIFER will seek leave of Court to amend

20   this Complaint to insert the true names and/or capacities of such fictitiously named Defendants

21   when the same have been ascertained.

22   14.    Plaintiff is informed and believes, and thereupon alleges, that at all times

23   mentioned herein, Defendants, and each of them, including DOES 1 through 50, inclusive, were

24   the agents, servants, employees, and/or joint venturers of their co-Defendants, and were, as such,

25   acting within the course, scope, and authority of said agency, employment and/or venture, and with

26   the knowledge, consent, permission, and/or ratification of each other, and that each Defendant, as

27   aforesaid, when acting as alleged herein, acted in concert to commit the acts complained of herein

28   -3-

1    and to engage in a course of conduct in the business practices complained of herein.

2    <u>**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**</u>

3           15.    CHEFIER is informed and believes, and based thereon alleges, that at all times

4    pertinent herein, Defendants maintained call centers located throughout the United States which

5    consumers were prompted to telephone to book flights and obtain other customer services relating

6    to travel on JetBlue Airways.

7           16.    Defendants' employees and agents at these call centers received incoming calls

8    from consumers and placed outgoing calls to consumers who resided in California.

9           17.    CHEIFER is informed and believes, and based thereon alleges, that Defendants had

10   a policy and practice of recording and/or monitoring these telephone conversations with California

11   consumers.

12          18.    CHEIFER is informed and believes, and based thereon alleges, that Defendants'

13   employees and agents at these call centers were directed, trained and instructed to, and did, record,

14   monitor and/or eavesdrop upon these telephone conversations with California consumers.

15          19.    Defendants intentionally installed and/or caused to be installed certain wiretapping,

16   eavesdropping and bugging equipment in Defendants' telephone lines.  CHEIFER is informed and

17   believes, and based thereon alleges, that all these devices were maintained and utilized to overhear,

18   record and bug each and every telephone conversation on said telephone lines.

19          20.    CHEIFER is informed and believes, and based thereon alleges, that these calls were

20   recorded, monitored and/or eavesdropped upon without knowledge or consent of consumers.

21          21.    CHEIFER was never informed that his calls to Defendants were being recorded

22   and/or monitored.

23          22.    During the course of these telephone conversations with employees and agents of

24   Defendants, CHEIFER revealed sensitive, private, and confidential information, including

25   personal and financial information.  Plaintiff did so with a reasonable expectation of privacy in

26   those telephone conversations.

27          23.    The wiretapping, bugging, and eavesdropping equipment mentioned herein was

28                                          -4-

1  used to listen to the telephone conversations of the Plaintiff and proposed class members; this

2  violated *California Penal Code* § 630 *et seq.*

3      24.    During November 2010, Plaintiff CHEIFER placed a telephone call to JETBLUE

4  from the State of California. During that call, CHEIFER spoke to an individual acting on behalf of

5  JETBLUE, and in doing so he disclosed personal identifying and financial information.

6      25.    At no time during that conversation was CHEIFER informed without inquiry by

7  JETBLUE, or by anyone, that his telephone call was being eavesdropped upon, wiretapped,

8  recorded and/or monitored. At no time did CHEIFER give consent for the telephone call to be

9  eavesdropped upon, wiretapped, recorded and/or monitored.

10      26.    CHEIFER had a reasonable expectation that the telephone conversation was, and

11  would remain, private and confidential, and he did not expect that his telephone communications

12  with JETBLUE were being overheard or recorded by anyone else. Such recording and/or

13  monitoring was and is highly offensive to CHEIFER and would be highly offensive to a reasonable

14  person, including members of the Plaintiff Class proposed herein.

15      27.    CHEIFER thereafter learned that telephone conversations between JETBLUE and

16  consumers, including those telephone conversations with CHEIFER and members of the Plaintiff

17  Class, are recorded and/or monitored.

18  **CLASS ACTION ALLEGATIONS**

19      28.    CHEIFER brings this action on behalf of himself and all others similarly situated as

20  a Class Action pursuant to § 382 of the *Code of Civil Procedure*. Plaintiff seeks to represent a

21  class composed of and defined as follows:

22      All persons located in California who received a telephone call from

23      JETBLUE (or one of Defendants acting on JETBLUE's behalf), and/or

24      called JETBLUE (or one of Defendants acting on JETLBUE's behalf),

25      whose telephone conversations were eavesdropped upon, bugged,

26      wiretapped and/or recorded by Defendants, without that Class

27      member's knowledge and/or consent, after the date one (1) year prior

28

-5-

1  to the filing of this Action.

2  29.  Plaintiff reserves the right under Rule 3.765, *California Rules of Court*, to amend or

3  modify the class description with greater specificity or further division into subclasses or limitation

4  to particular issues.

5  30.  This action has been brought and may properly be maintained as a class action

6  under the provisions of § 382 of the *Code of Civil Procedure* because there is a well-defined

7  community of interest in the litigation and the proposed Class is easily ascertainable.

8  **A.   Numerosity**

9  31.  The potential members of the proposed Class as defined are so numerous that

10  joinder of all the members of the proposed Class is impracticable.  While the precise number of

11  proposed Plaintiff Class members has not been determined at this time, CHEIFER is informed and

12  believes that the proposed class encompasses over two hundred fifty (250) members.

13  32.  Plaintiff alleges Defendants' records will provide information as to the number and

14  location of all proposed Plaintiff Class members.  Joinder of all members of the proposed Class is

15  not practicable.

16  **B.   Commonality**

17  33.  There are questions of law and fact common to the proposed Class that predominate

18  over any questions affecting only individual class members.  These common questions of law and

19  fact include, without limitation:

20          a.  Whether JETBLUE had a policy of wiretapping, eavesdropping, upon

21             and/or monitoring consumers' incoming calls;

22          b.  Whether JETBLUE implemented its policy of wiretapping, eavesdropping

23             upon and/or monitoring consumers' incoming calls;

24          c.  Whether JETBLUE's policy of wiretapping, eavesdropping upon and/or

25             monitoring consumers' incoming calls constituted a violation of *California*

26             *Penal Code* § 631(a), 632(a) and/or 637;

27          d.  Whether JETBLUE disclosed to incoming callers that their incoming

28  -6-

telephone conversations were being wiretapped, eavesdropped upon and/or monitored;

e. Whether Class members consented to JETBLUE's wiretapping, eavesdropping upon and/or monitoring of such incoming calls;

f. Whether JETLBUE had a policy of wiretapping, eavesdropping upon and/or monitoring California consumers' outgoing calls;

g. Whether JETBLUE implemented its policy of wiretapping, eavesdropping upon and/or monitoring California consumers' outgoing calls;

h. Whether JETBLUE's policy of wiretapping, eavesdropping upon and/or monitoring California consumers' outgoing calls constituted a violation of *California Penal Code* § 631(a), 632(a) and/or 637;

i. Whether JETBLUE disclosed to outgoing California callers that their incoming telephone conversations were being wiretapped, eavesdropped upon and/or monitored;

j. Whether Class members consented to wiretapping, eavesdropping upon and/or monitoring of such outgoing calls; and

k. Whether the named Plaintiff and the Class are entitled to recover damages and the measure of such damages.

**C. Typicality**

34. The claims of the named Plaintiff are typical of the claims of the proposed Class. Plaintiff and all members of the Plaintiff Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein.

**D. Adequacy of Representation**

35. Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed Plaintiff Class. Counsel who represents Plaintiff is competent and experienced in class action litigation.

-7-

1  E.   **Superiority of Class Action**

2  36.   A class action is superior to other available means for the fair and efficient

3  adjudication of this controversy. Individual joinder of all proposed Plaintiff Class members is not

4  practicable, and questions of law and fact common to the proposed Class predominate over any

5  questions affecting only individual members of the proposed Class. Each member of the proposed

6  Class has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or

7  practices.

8  37.   Class action treatment will allow those similarly situated persons to litigate their

9  claims in the manner that is most efficient and economical for the parties and the judicial system.

10  Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this

11  action that would preclude its maintenance as a class action.

12  <u>**FIRST CAUSE OF ACTION**</u>

13  <u>**PLAINTIFF AND THE PLAINTIFF CLASS AGAINST ALL DEFENDANTS**</u>

14  <u>**INVASION OF PRIVACY (CAL. PENAL CODE § 630 ET. SEQ.)**</u>

15  38.   Plaintiff incorporates paragraphs 1 through 37 of this Complaint as though fully set

16  forth herein.

17  39.   Defendants, and each of them, installed and/or caused to be installed certain

18  wiretapping, eavesdropping and bugging equipment on their telephone lines.

19  40.   Plaintiff is informed and believes, and based thereon alleges, that all these devices

20  were maintained and utilized to overhear, record or bug each and every incoming and outgoing

21  telephone conversation over said telephone lines.

22  41.   The aforementioned wiretapping, bugging, and eavesdropping equipment was used

23  to listen to the telephone conversations between CHEIFER and members of the Plaintiff Class, on

24  one hand, and the Defendants, on the other, all in violation of *California Penal Code* § 632(a).

25  42.   Plaintiff is informed and believes, and based thereon alleges, that each of the

26  aforesaid telephone communications, and the recordings thereof, were disseminated by and

27  between the Defendants, and each of them, all in violation of *California Penal Code* § 630 *et. seq.*

28  -8-

43.     At no time before or during these telephone conversations did Defendants, or any of them, or any of their employees, agents, managers, officers or directors, or any other person, inform CHEIFER or any members of the Plaintiff Class that the interceptions, eavesdropping, wiretapping, bugging and recording of their telephone conversations were taking place, and at no time did CHEIFER or any members of the Plaintiff Class consent to this activity.

44.     Defendants, and each of them, knowing that it was unlawful and a violation of *California Penal Code § 630 et seq.* did intrude on CHEIFER's and the Plaintiff Class members' privacy by knowingly and/or negligently and/or intentionally engaging in the aforementioned intercepting, eavesdropping, wiretapping, bugging and recording activities in connection with the telephone conversations between CHEIFER and the Plaintiff Class members, on the one hand, and employees, managers, officers and directors of defendant JETBLUE, and all other defendants, on the other, all as aforementioned and alleged herein.

45.     The aforesaid telephone conversations between Plaintiff and Plaintiff Class members, on the one hand, and Defendants, on the other hand, were confidential communications to which Plaintiff and Plaintiff Class members had a reasonable expectation of privacy.

46.     Based on the foregoing, CHEIFER and members of the Plaintiff Class are entitled to statutory damages pursuant to *California Penal Code § 637.2* and injunctive relief pursuant to *California Penal Code § 637.2(b)*.

Wherefore, CHEIFER and the Plaintiff Class he seeks to represent request relief as described below.

## SECOND CAUSE OF ACTION

## PLAINTIFF AND THE PLAINTIFF CLASS AGAINST ALL DEFENDANTS

## NEGLIGENCE

47.     Plaintiff incorporates paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     Defendants, and each of them, had various statutory and common law duties not to engage in the aforementioned wiretapping, eavesdropping, recording and bugging activities which

-9-

1  led to the rights to privacy of CHEIFER and Plaintiff Class members being invaded and breached.

2      49.    Defendants, and each of them, negligently and recklessly engaged in the

3  aforementioned eavesdropping, wiretapping, recording and bugging activities of CHEIFER and the

4  members of the Plaintiff Class.

5      50.    These activities of Defendants, and each of them, as aforesaid in this cause of

6  action and in this complaint, caused actual, statutorily-imposed and/or demonstrable damages to

7  CHEIFER and the members of the Plaintiff Class.

8      51.    As a result of Defendants' activities as addressed in this cause of action and in this

9  complaint, CHEIFER suffered severe emotional distress, inconvenience, anxiety and upset.  As a

10  result of such injuries, CHEIFER has suffered general damages according to proof.

11      52.    Based on the foregoing, CHEIFER and members of the Plaintiff Class suffered

12  damage as a result of the conduct of Defendants, and each of them.

13      Wherefore, CHEIFER and the Plaintiff Class he seeks to represent request relief as

14  described below.

15                          **RELIEF REQUESTED**

16      WHEREFORE, Plaintiff prays for the following relief:

17          a.    An order certifying this matter as a class action;

18          b.    An order naming counsel herein as Class counsel;

19          c.    Consequential damages or statutory damages of $5,000 per violation,

20              pursuant to *California Penal Code* § 637.2, whichever is greater;

21          d.    Injunctive relief pursuant to *California Penal Code* § 637.2(b), enjoining

22              Defendants from engaging in conduct violative of *California Penal Code* §

23              630 *et. seq.*;

24          e.    Economic damages;

25          f.    Non-economic damages;

26          g.    Costs of suit incurred herein;

27          h.    Any and all prejudgement interest permitted by law;

28                              -10-

1          i.      Such further relief, costs, and damages the Court deems proper.

2   **DEMAND FOR JURY TRIAL**

3       Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

4

5   DATED: December 23, 2010         Respectfully submitted,

6                                     GAINES & GAINES

7                                     A Professional Law Corporation

8

9                By: _____

10                                    KENNETH S. GAINES
                                  DANIEL F. GAINES

11                                    ALEX P. KATOFSKY
                                  Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                            -11-

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DANIEL F. GAINES, ESQ. SBN 251488<br>ALEX P. KATOFSKY, ESQ. SBN 202754<br>GAINES & GAINES, APLC<br>21550 OXNARD STREET, SUITE 980<br>WOODLAND HILLS, CA 91367<br>TELEPHONE NO: (818) 703-8985   FAX NO: (818) 703-8984<br>ATTORNEY FOR *(Name):* PLAINTIFF LEE CHEIFER | **FILED**<br>Los Angeles Superior Court<br><br>DEC 23 2010<br><br>JOHN A. CLARKE, CLERK<br><br>BY DAWN ALEXANDER, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, 90012
BRANCH NAME: CENTRAL

CASE NAME: CHEIFER V. JET BLUE

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BC451887 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400-3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [X] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence         f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

4. Number of causes of action *(specify):* 2

5. This case [X] is   [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: DECEMBER 23, 2010

ALEX P. KATOFSKY, ESQ. SBN 202754
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
                                                                                                             Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

| SHORT TITLE: CHEIFER V. JET BLUE | CASE NUMBER BC451887 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES  CLASS ACTION? [ ] YES  LIMITED CASE? [ ] YES  TIME ESTIMATED FOR TRIAL 10 [ ] HOURS/ [X] DAYS

Item II.  Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (See Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | [X] A6029 Other Commercial/Business Tort (not fraud/breach of contract) | (1.), 2., 3. |
| | Civil Rights (08) | [ ] A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013 Fraud (no contract) | 1., 2., 3. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4
LA-481

| SHORT TITLE: CHEIFER V. JET BLUE | | CASE NUMBER |
| --- | --- | --- |

| A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
| --- | --- | --- |
| Professional<br>Negligence<br>(25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination<br>(36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract<br>(37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| Wrongful Eviction<br>(33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer -<br>Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer -<br>Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer -<br>Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

*Left margin labels (top to bottom):* Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) | Employment | Contract | Real Property | Unlawful Detainer | Judicial Review

*Lower left:* 12/23/10

| SHORT TITLE: | CHEIFER V. JET BLUE | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Judicial Review (Cont'd.) | Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: CHEIFER V. JET BLUE | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br>[X]1. [_]2. [_]3. [_]4. [_]5. [_]6. [_]7. [_]8. [_]9. [_]10. | | ADDRESS:<br>TERMINAL 3, 300 WORLD WAY |
|---|---|---|
| CITY:<br>LOS ANGELES | STATE:<br>CA  ZIP CODE:<br>90045 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the SUPERIOR COURT OF CALIFORNIA    courthouse in the CENTRAL            District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: DECEMBER 23, 2010

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
ALEX P. KATOFSKY, ESQ.

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 01/13/11 | DEPT. 324 |

| | | | |
|---|---|---|---|
| HONORABLE EMILIE H. ELIAS | JUDGE | A. MORALES | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC451887 | Plaintiff Counsel | NO APPEARANCES |
| | LEE CHEIFER VS JETBLUE AIRWAYS CORPORATION | Defendant Counsel | |
| | NON-COMPLEX (01-13-11) | | |

**NATURE OF PROCEEDINGS:**

COURT ORDER

This Court makes its determination whether or not this case should be deemed complex pursuant to Rule 3.400 of the California Rules of Court.

This case is designated non-complex and is reassigned to Judge Kenneth R. Freeman in Department 64 at Stanley Mosk Courthouse for all further proceedings.

Plaintiff is ordered to serve a copy of this minute order on all parties forthwith and file a proof of service in Department 64 within five (5) days of service.

Any party objecting to the non-complex designation must file an objection and proof of service in Department 324 within ten (10) days of service of this minute order. Any response to the objection must be filed in Department 324 within seven (7) days of service of the objection. This Court will make its ruling on the submitted pleadings.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

Page   1 of   2    DEPT. 324

MINUTES ENTERED
01/13/11
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 01/13/11 | | DEPT. 324 |
| HONORABLE EMILIE H. ELIAS   JUDGE | A. MORALES | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE   Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am | BC451887 | Plaintiff Counsel |
| | | NO APPEARANCES |
| | LEE CHEIFER | |
| | VS | Defendant |
| | JETBLUE AIRWAYS CORPORATION | Counsel |
| | | |
| | NON-COMPLEX (01-13-11) | |

**NATURE OF PROCEEDINGS:**

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
01-13-11 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 01-13-11

John A. Clarke, Executive Officer/Clerk

By: _____
        K. HILAIRE

GAINES & GAINES, APLC
Kenneth S. Gaines, Esq.
21550 Oxnard Street, Suite 980
Woodland Hills, California  91367

MINUTES ENTERED
01/13/11
COUNTY CLERK

1   HOLLAND & KNIGHT LLP
       Shelley G. Hurwitz (State Bar #217566)
2   633 West Fifth Street, 21st Floor
    Los Angeles, California  90071-2040
3   Telephone (213) 896-2400
    Facsimile (213) 896-2450
4   shelley.hurwitz@hklaw.com

5   Attorneys for Defendant
    JetBlue Airways Corporation

6

7

8                   **SUPERIOR COURT OF CALIFORNIA**

9                     **COUNTY OF LOS ANGELES**

10  LEE CHEIFER, on behalf of himself and          )
    all other similarly situated, and on behalf of )   Case No.: BC451887
11  the general public,                            )
                                                   )
12           Plaintiffs,                           )
                                                   )   **ANSWER TO COMPLAINT**
13           vs.                                   )
                                                   )
14  JETBLUE AIRWAYS CORPORATION, a                 )
    Delaware corporation and DOES 1 through        )
15  50, inclusive                                  )
                                                   )
16           Defendants.                           )
                                                   )
17                                                 )
                                                   )
18                                                 )
                                                   )
19

20

21

22

23

24

25

26

27

28

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 25 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A. El LaFLEUR-CLAYTON

-1-

JetBlue Airways Corporation ("Defendant") answers the unverified Complaint filed by Plaintiff as follows:  Defendant generally denies each and every allegation of Plaintiff's unverified Complaint pursuant to California Code of Civil Procedure § 431.30 and further denies that Defendant has injured or damaged Plaintiff in any manner or amount.  This Answer to the Complaint is filed without prejudice to Defendant's right to file an amended answer, including additional affirmative defenses and/or cross-complaints, after conducting discovery.  For its separate and distinct affirmative defenses, without conceding that it bears the burden of proof or persuasion as to any of the issues raised in these defenses, Defendant alleges as follows:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Cause of Action)**

The Complaint and each purported cause of action fail to state facts sufficient to constitute a cause of action against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Statute of Limitations)**

The Complaint, and each cause of action thereof, is barred by the statutes of limitation set forth in the California Code of Civil Procedure.

### THIRD AFFIRMATIVE DEFENSE
**(Comparative Negligence)**

Plaintiff was careless and negligent in the matters alleged in the Complaint and in each cause of action therein; this negligence proximately caused, in whole or in part, the damages alleged in the Complaint.  In the event that Plaintiff is entitled to any damages, the amount of these damages should be reduced by the comparative fault of Plaintiff and/or any person whose negligent acts or omissions are imputed to them.

### FOURTH AFFIRMATIVE DEFENSE
**(Standing)**

Plaintiff's claims are barred because he lacks standing.

### FIFTH AFFIRMATIVE DEFENSE
**(Laches)**

Plaintiff's claims are barred by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

To the extent that Plaintiff failed to exercise reasonable care to mitigate the damages allegedly sustained, the amount of damages to which Plaintiff is entitled, if any, should be reduced by the amount of damages which Plaintiff should reasonably have mitigated.

## SEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

As a result of Plaintiff's unreasonable delay in bringing this action without good cause therefore, in addition to other unreasonable acts and omissions, Plaintiff has waived one or more of the claims stated or purportedly stated in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

### (No reasonable expectation of privacy)

Plaintiff cannot maintain his claims because he had no reasonable expectation of privacy in his alleged conversations with Defendant.

## NINTH AFFIRMATIVE DEFENSE

### (Intervening and Superseding Cause)

To the extent that any loss, injury or damage suffered by Plaintiff was proximately caused by the negligent or willful acts or omissions of third parties whom Defendant neither controlled nor had the right to control, and was not proximately caused by any act, omission or other conduct of Defendant, such acts, omissions, or other conduct of third-parties constitute intervening or superseding causes of that loss, injury or damage allegedly suffered by Plaintiff, thereby cutting off any liability on the part of Defendant.

## TENTH AFFIRMATIVE DEFENSE

### (No Causation)

Defendant alleges that no conduct by or attributable to it was the cause in fact or the proximate cause of the damages, if any, suffered by Plaintiff, nor was it a substantial factor in bringing about said damages.

**WHEREFORE**, having generally denied Plaintiff'' Complaint and having alleged affirmative defenses, Defendant prays:

1       1.     That Plaintiff takes nothing by this Complaint;

2       2.     For judgment and dismissal of all claims;

3       3.     For Defendant's costs and disbursements incurred herein; and

4       4.     For such other and further relief as the Court may deem proper.

5   Date: January 25 2011         HOLLAND & KNIGHT LLP

6

7                    By:

8                        Shelley G. Hurwitz

9                        Attorneys for JetBlue Airways Corporation

ANSWER TO COMPLAINT

1
<u>Lee Cheifer v. JetBlue Airways Corp.</u>
LASC (Complex) No. BC451887

2
PROOF OF SERVICE

3
State of California                    )
                                       )        ss.
4
County of Los Angeles                  )

5
I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and
not a party to the within action.  My business address is 633 W. 5th St., Suite 2100, Los Angeles,
6
California 90071.

7
On **January 25, 2011**, I served the document described as **ANSWER TO COMPLAINT.** on
the interested parties in this action, enclosed in a sealed envelope, addressed as follows:
8

9
Kenneth S. Gaines
Daniel F. Gaines
10
Alex P. Katofsky
Gaines & Gaines APLC
11
21550 Oxnard Street, Suite 980
Woodland Hill, CA 91367
12

13
<u>X</u>        (By Mail)

14
        Following ordinary business practices, I placed the document for collection and mailing
        at the offices of Holland & Knight LLP, 633 West Fifth Street, 21st Floor, Los Angeles,
15
        California 90071, in a sealed envelope.  I am readily familiar with the business' practice
        for collection and processing of correspondence for mailing with the United States Postal
16
        Service, and, in the ordinary course of business, such correspondence would be deposited
        with the United States Postal Service on the day on which it is collected at the business.
17

18
        I declare under penalty of perjury under the laws of the State of California that the above
        is true and correct.
19

20
Executed on **January 25, 2011**, at Los Angeles, California.

21

22
_____
                                          Gloria Hoshiko
23

24

25
# 8799085_v1
26

27

28

-5-

ANSWER TO COMPLAINT

<u>Lee Cheifer v. JetBlue Airways Corp.</u>
USDC No. _____   (LASC No. BC45188)

PROOF OF SERVICE

State of California      )
                       )   ss.
County of Los Angeles   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 633 W. 5th St., Suite 2100, Los Angeles, California 90071.

On **January 27, 2011,** I served the document described as **NOTICE OF REMOVAL OF CIVIL ACTION FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES** on the interested parties in this action, enclosed in a sealed envelope, addressed as follows:

> Kenneth S. Gaines
> Daniel F. Gaines
> Alex P. Katofsky
> Gaines & Gaines APLC
> 21550 Oxnard Street, Suite 980
> Woodland Hill, CA 91367

<u>X</u>      (By Mail)

Following ordinary business practices, I placed the document for collection and mailing at the offices of Holland & Knight LLP, 633 West Fifth Street, 21st Floor, Los Angeles, California 90071, in a sealed envelope. I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service, and, in the ordinary course of business, such correspondence would be deposited with the United States Postal Service on the day on which it is collected at the business.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on **January 27, 2011,** at Los Angeles, California.

_____
Gloria Hoshiko